AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Indiana

BEST INN MIDWEST, LLC

_____
*Plaintiff*

UNDERWRITER'S AT LLOYD'S, LONDON

_____
*Defendant*

)
)
)
)
)
)

Civil Action No. Case No: 1:22-cv-01586-RLY-KMB

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Ohio Security Insurance Company c/o Corporation Service Company, 10 Ferry Street S313, 03301, Concord NH

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place: MC Law, PLLC<br>1441 U St. NW, Suite 712<br>Washington, DC, D.C. 20009 | Date and Time:<br><br>11/06/2023 12:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/18/2023

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | /s/Casey Scott McKay/<br>_____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
BEST INN MIDWEST, LLC _____, who issues or requests this subpoena, are:
Casey Scott McKay, MC Law PLLC, 1441 U St. NW, Suite 712, Washington, DC, D.C. 20009; casey@mclaw.io;
202.743.1972

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit A

1

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. Case No: 1:22-cv-01586-RLY-KMB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Exhibit A                                                                2

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c)  Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d)  Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e)  Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g)  Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit A

3

# EXHIBIT A

## DEFINITIONS

As used in this Exhibit A, the following terms shall have the following meanings:

1   "Concerning" means consisting of, referring to, relating to, reflecting, or being in any way logically or factually connected with the matter discussed.

2   "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including but not limited to, all Documents (defined below), emails, text message, and other Electronically Transmitted Information, telephone or personal conversations, meetings, conferences and discussions. Once identified, a communication may be subsequently identified by use of a common description.

3   "Date" means the exact day, month, and year if ascertainable, or, if not, the best available approximation (including relationship to other events).

4   "Describe" means set forth fully and unambiguously every fact relevant to the subject of the Interrogatory, of which you (including your agents and representatives) have knowledge or information.

1

5    "Document" is synonymous in meaning and equal in scope to its usage in FRCP

34(a)(1)(A). The term "document" refers to any document now or at any time in

Petitioner's possession, custody, or control. A person is deemed in control of a

document if the person has any ownership, possession, or custody of the

document, or the right to secure the document or a copy thereof from any

person or public or private entity having physical possession thereof. The term

"document" as used herein shall refer to, without limitation, any written,

printed, typed, electronically stored or other graphic or photographic matter

(including, without limitation, photographs, charts, graphs, microfiche,

microfilm, videotapes, recordings and motion pictures) and shall include the

originals, identical copies and all non-identical copies, whether different from

the original by reason of any notation made on each copy or otherwise and shall

include, without limiting the generality of the foregoing, all emails, letters,

telegrams, teletypes, correspondence, contracts, agreements, notes, mechanical

and electronic sound recordings or transcripts thereof (including, without

limitation, tapes, cassettes and discs), computer print-outs or other printed

matter produced through computers, electronically stored information1 on any

computer device or cell phone, calendar or diary entries, memoranda, notes, or

records of all telephone or personal conversations, meetings or any other

communication, inter-office and intra-office communications, statements,

manuals, summaries or compilations, minutes of meetings, charges, maps,

2

reports, analyses, studies, graphs, prospectuses, returns, statistics, pamphlets, books, offers, bulletins, order papers, articles, catalogs, records, tables, books of account, ledgers, vouchers, canceled checks, invoices, bills, receipts, tickets, worksheets and all drafts, alterations, modifications and changes of memos to any of the foregoing.

6   "Electronically stored information ("ESI")" means any documents or information that are stored in electronic form.[1]

7   "Lloyd's" refers to Underwriters at Lloyd's, London, any of its subsidiaries, divisions, parent corporations, operating companies, predecessors, and/or successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and/or each of the foregoing entities' employees, agents, officers, directors, representatives, consultants, accountants, reinsurers,

---

[1] ESI should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, optically, or otherwise stored as any of the following: communications conducted in ephemeral messaging applications or in workplace collaboration tools; word processed documents (e.g., Word, WordPerfect, pages, etc. (including all drafts, revisions, track-changes, comments, notes, etc.)); electronic records of online activity, such as social media postings and other activity; data generated or stored by devices connected to the Internet of Things (IoT). digital communications (e.g., email and attachments, voicemail, call logs, instant and text messaging, etc.); spreadsheets and tables (e.g., Excel, Numbers, or Lotus 123 Worksheets, etc...); accounting application data (e.g., Quickbooks, Money, Peachtree Data Files, etc.); image and facsimile files (e.g., .pdf, .tiff, .jpg, .gif images, etc...); sound recordings (e.g., .wav, .mp3, avi, etc... files); video and animation (e.g., .avi, .mov, mpg, mp4, avi, etc... files); databases (e.g., Access, Oracle, SQL Server data, sap, pst, etc.); contact and relationship management data (e.g., Outlook, act!, etc.); calendar and diary application data (e.g., Outlook pst, Yahoo, blog tools, etc.); online access data (e.g., temporary internet files, history, cookies, etc...); presentations (e.g., powerpoint, keynote, corel presentations, etc...) network access and server activity logs; project management application data; computer aided design/drawing files; and, back up and archival files (e.g., zip, .gho, etc;). ESI may be stored on and retrieved from many sources, including, but not limited to, the following: Computer hard drives; company network servers; thumb (USB) drives; databases; the cloud; mobile devices, such as mobile phones and tablet computers; social media websites, such as Facebook, Twitter, and LinkedIn.

and attorneys and/or representatives, including any person who served in any such capacity at any time during the relevant time period specified herein.

8    "Mid-America" refers to Mid-America Catastrophe Services, LLC, any of its subsidiaries, divisions, parent corporations, operating companies, predecessors, and/or successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and/or each of the foregoing entities' employees, agents, officers, directors, representatives, consultants, accountants, reinsurers, and attorneys and/or representatives, including any person who served in any such capacity at any time during the relevant time period specified herein.

9    "National General." refers to National General Lender Services Adjusting, LLC, any of its subsidiaries, divisions, parent corporations, operating companies, predecessors, and/or successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and/or each of the foregoing entities' employees, agents, officers, directors, representatives, consultants, accountants, reinsurers, and attorneys and/or representatives, including any person who served in any such capacity at any time during the relevant time period specified herein.

10   "Ohio Security," "you," "your" refers to Ohio Security Insurance Company any of its subsidiaries, divisions, parent corporations, operating companies, predecessors, and/or successor companies, affiliates, parents, any partnership

or joint venture to which it may be a party, and/or each of the foregoing entities'
employees, agents, officers, directors, representatives, consultants, accountants,
reinsurers, and attorneys and/or representatives, including any person who
served in any such capacity at any time during the relevant time period
specified herein.

11   The "Ohio Security Litigation" refers to *Ohio Security Insurance v. Best Inn
Midwest LlC* (S.D. Ind. 2020)_, 1:20-cv-01223, filed on 22 April 2020 and
terminated on 13 March 2023.

12   The "Ohio Insurance Claims" refers to any and all insurance claims filed by
Ashok Reddy and/or Best Inn under the Policy, including, but not limited to,
the following claims: 23564627, 23574253, 23586875, 23592598, 23742376,
23742384, 23749957, 23749977, 23764524, 23764527, 23765077, 23765090,
23765119, 23765193, 23789107. Dates and loss descriptions for the Ohio
Insurance Claims are as follows:

**Ohio Insurance Claim No. 23574253**
- Reported on: August 3, 2019
- Loss date: August 1, 2019
- Loss Description: Water leaking in back area of building. After
  employees terminated, the leaks became worse. Health Department
  ordered everybody out within 24 hours due to water leaks, flat roof
  leaks, drywall damage and mold, and a few more things.

**Ohio Insurance Claim No. 23742384**
- Reported on: October 2019

5

- Loss date: September 1, 2019
- Loss Description: When we were removing wet and damaged drywall from the back part of the building, someone was coming in and cutting out the copper plumbing pipe.

**Ohio Insurance Claim No. 23586875**

- Reported on: September 9, 2019
- Loss date: August 23, 2019
- Loss Description: Roofer came out on August 8 or 9, 2019 to look at roof for the purpose of giving a repair estimate; he returned on August 23, 2019 to start work, and he called me to let me know that there is more damage to the roof and the A/C units have had copper and motors stripped out of them. Also, I reported that TVs and refrigerators have been stolen from the main building.

**Ohio Insurance Claim No. 23749977**

- Reported on: Nov., 2019
- Loss date: November 3, 2019
- Loss Description: Former temporary worker came into building and used an ax to break into a room that was storing TVs – about 20 flat screen Tvs were stolen.

**Ohio Insurance Claim No. 23764524**

- Reported on: November 1, 2019
- Loss date:
- Loss Description: Commercial washer and dryer needs repair /change out due to possible vandalism or just need repair – breakdown.

**Ohio Insurance Claim No. 23564627**

- Reported on: December 16, 2019
- Loss date:
- Loss Description: Phone system not working right.

**Ohio Insurance Claim No. 23765119**

- Reported on: 12-20-19
- Loss date: August 15 and December 19, 2019
- Loss Description: Multiple sliding glass doors and interior doors damaged by vandalism.

**Ohio Insurance Claim No. 23592598**

- Reported on: September 25, 2019
- Loss date: September 19, 2019
- Loss Description: In the restaurant area, walls were broken out and copper was cut out of the walls & ceiling. This occurred in the kitchen and main restaurant seating area.

**Ohio Insurance Claim No. 23742376**

- Reported on: August 3, 2019
- Loss date: April 15 to July 22, 2019
- Loss Description: Employee embezzeled cash from the insured.

**Ohio Insurance Claim No. 23749957**

- Reported on: November 5, 2019
- Loss date: September 1, 2019
- Loss Description: Water heater according to Hope Plumbing should be replaced.

**Ohio Insurance Claim No. 23765077**

- Reported on: 12-19-19
- Loss date: 12-10-19
- Loss Description: Burglar broke through lobby steel door and broke banquet room door. Stole riding lawn mower and a regular self-propelled mower.

**Ohio Insurance Claim No. 23765090**

- Reported on: 12-19-19
- Loss date: 11-14-19
- Loss Description: Reclaim for roof that Liberty initially declined. Insured hired a roofer and paid about 75% of the contract amount; Contractor said that he is finished with it, but we still had leaks – small ones with 1 big one in the restaurant area.

**Ohio Insurance Claim No. 23765193**

- Reported on: 12-20-19
- Loss date: 12-15-19
- Loss Description: 40 to 60 room A/Cs had copper cut out; about 10 small refrigerators stolen; about 5 large refrigerators stolen; 60-80 TVs

7

stolen or broken; Air scrubber stolen – it was marked Property of Best Inn.

13    "Policy" refers to Policy No. BKS58432709 issued by Ohio Security to Best Inn.

14    "Property" refers to the motel located at 4505 South Harding Street, Indianapolis, IN.

15    "Relate(s) to" "Related to" "Relating to" or "in Relation to" mean constituting, consisting of, referring to, regarding, reflecting, concerning, discussing, evidencing, commenting on, or having any logical or factual connection with the matter identified, in whole or in part.

16    "Representatives" means any and all present or former agents, employees, servants, officers, directors, accountants, attorneys, consultants, sureties, indemnitors, insurers, subcontractors, and other persons acting or purporting to act on behalf of the Person or Entity referred to.

17    The term "person" means any natural person or any legal entity, including, but not limited to, any business or governmental entity, organization, or association.

18    A reference to a "person" includes an individual, corporation, partnership, joint venture, limited liability company, governmental authority, unincorporated organization, trust, association, or other entity and includes all of that person's

8

principals, employees, agents, attorneys, consultants, and other representatives.

19   The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the interrogatory all responses that might otherwise fall outside the scope of this interrogatory.

20   The terms "all," "any," or "each" encompass any and all of the matter discussed.

21   The use of singular form includes plural, and vice versa.

22   The use of present tense includes past tense, and vice versa.

23   The masculine form shall also be construed to include the feminine and vice versa.

24   Any undefined term used herein shall have its plain and ordinary meaning, as defined by normal dictionary definitions. You should interpret such dictionary definitions as broadly as possible, and in the event of conflicting definitions, the broader and more inclusive definition applies.

Exhibit A                                                                                           12

**INSTRUCTIONS**

Please produce all Documents that are in your possession, custody, or control, or that are reasonably obtainable from other sources.

1   If a Document responsive to any Request is no longer in your possession, custody or control, please furnish a list identifying each said Document, together with the following information: what disposition was made of the Document, the date of such disposition, and identify all persons having knowledge of the Document's contents.

2   If any Document responsive to any request has been destroyed, please furnish a list identifying each said Document, together with the following information: the location of any copies of said Document, the date of such destruction, and the name of the person who destroyed the Document or ordered or authorized such destruction.

3   If you claim any form of privilege or other basis for withholding or redacting requested documents or information, please furnish a list identifying each document for which the privilege or protection is claimed, together with the following information: date, sender, recipient, and persons to whom copies were furnished, together with their job titles, subject matter, basis on which the

10

document is withheld, and the paragraph of the Request to which such document(s)responds.

4     The use of the past or present tense herein shall be construed to make these Requests inclusive rather than exclusive.

5     The use of singular or plural terms shall be construed to make these Requests inclusive rather than exclusive.

6     Each request herein for a document or documents, whether memoranda, reports, letters, minutes, or other documents of any description, requires the production of the document in its entirety, without redaction, censoring, or expurgation.

## REQUESTS

1     Any and all Documents, Communications, records, or other information concerning the Policy.

2     Any and all Documents, Communications, records, or other information concerning the claims handling of any of the Ohio Insurance Claims by you, including but not limited to the following:

    –     any and all of your policies and procedures used in handling, adjusting, or inspecting any of the Ohio Security Claims;

11

– your policies and procedures for handling claims like the Ohio Security Claims;
– your policies and procedures for handling claims for hotels and motels used in handling, adjusting, or inspecting any of the Ohio Security Claims;
– your policies and procedures for evaluating and reviewing loss appraisals used in handling, adjusting, evaluating, or inspecting any of the Ohio Security Claims;
– your policies and procedures for issuing payment to policyholders for covered claims used in handling, adjusting, or inspecting any of the Ohio Security Claims;
– your policies and procedures for handling multiple claims tendered under the same policy used in handling, adjusting, or inspecting any of the Ohio Security Claims;
– your policies and procedures for handling claims at a property with prior losses that were used in handling, adjusting, or inspecting any of the Ohio Security Claims;
– your policies and procedures for assigning claims handling to any third-party adjusters used in handling, adjusting, or inspecting any of the Ohio Security Claims.

3   Any and all Documents, Communications, records, or other information concerning any of the Ohio Insurance Claims, including but not limited to the following:

– Any and all Documents, Communications, records, or other information related to any and all claim files for each of the Ohio Insurance Claims;
– Any and all Documents, Communications, records, or other information concerning the facts and circumstances surrounding each of the Ohio Insurance Claims;
– Any and all Documents, Communications, records, or other information concerning decisions related to adjusters assigned to each of the Ohio Insurance Claims;
– Any and all Documents, Communications, records, or other information concerning the categories and content of information requested by,

12

submitted to, and/or evaluated by you as part of your investigation or handling of each of the Ohio Insurance Claims;

– Any and all Documents, Communications, records, or other information concerning Adjustment of each of the Ohio Insurance Claims; Any and all Documents, Communications, records, or other information concerning your interactions with National General.;

– Any and all Documents, Communications, records, or other information concerning your interactions with Mid-America;

– Any and all Documents, Communications, records, or other information concerning your interactions with Lloyd's;

– Any and all Documents, Communications, records, or other information concerning your interactions with Best Inn; Any and all Documents, Communications, records, or other information concerning your interactions with Ron Wish;

– Any and all Documents, Communications, records, or other information concerning facts and circumstances related to each of your visits to the Property;

• and Any and all Documents, Communications, records, or other information concerning the facts and circumstances related to your efforts to identify damages that are the subject of each of the Ohio Insurance Claims.

4   Any and all Documents, Communications, records, or other information concerning any of the Ohio Insurance Claims and your consultants retained and/or consulted with in connection with each of the Ohio Security Claims; and

5   Any and all Documents, Communications, records, or other information related to the Ohio Insurance Claims between you and any of the following:

– Best Inn;
– Dustin Carrico;
– Zach Pestana;

13

– Martin Wiley;
– Ron Wish;
– Rob Rhinesmith;
– Any other representative or employee of Mid-America relating to the Ohio Insurance Claims;
– Daniel Frome;
– Cole Willis;
– Brian Wehmeister;
– Any other representative or employee of the Marion County Public Health Department relating to the Property;
– Any representative or employee of Seattle Specialty Insurance Services relating to the Ohio Insurance Claims;
– Any representative or employee of Ross Diversified Insurance Services relating to the Ohio Insurance Claims;
– Any representative or employee of the Indianapolis Fire Department relating to any of the Ohio Insurance Claims;
– Any representative or employee of the Indianapolis Fire Department relating to any of the Ohio Insurance Claims;
– Any representative or employee of the Indianapolis Metropolitan Police Department relating to the Ohio Insurance Claims;
– Any representative or employee of Lloyd's relating to the Ohio Insurance Claims;
– Any person involved in the Ohio Insurance Claims in any way;
– and Any consultants or other third parties you communicated with regarding the Ohio Insurance Claims.

6   Any and all Documents, Communications, records, or other information concerning internal and external Communications relating to any of the Ohio Insurance Claims.

7   Any and all Documents, records, or other information related to Ohio Security's representatives that visited the Property concerning the Ohio Insurance Claims

14

and all Documents or other information that these representatives received or learned.

8    Any and all Documents, Communications, records, or other information exchanged between Ohio Security and Best Inn related to any of the Ohio Insurance Claims.

9    Any and all Documents, Communications, records, or other information exchanged between Ohio Security and National General related to any of the Ohio Insurance Claims.

10   Any and all Documents, Communications, records, or other information exchanged between Ohio Security and Mid-America related to any of the Ohio Insurance Claims.

11   Any and all Documents, Communications, records, or other information exchanged between Ohio Security and Lloyd's related to any of the Ohio Insurance Claims.

12   Any and all Documents, Communications, records, or other information concerning your change in or departure from your policies and procedures relating in any way to the handling of the Ohio Insurance Claims.

Exhibit A                                                                18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE OHIO SECURITY INSURANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01223-RLY-MG |
| | ) | |
| BEST INN MIDWEST LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| BEST INN MIDWEST LLC, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE OHIO SECURITY INSURANCE, | ) | |
| | ) | |
| Counter Defendant. | ) | |

**ENTRY ADOPTING REPORT AND RECOMMENDATION**

This is an insurance coverage dispute. Before the court are the Magistrate Judge's

Report and Recommendation on Ohio Security Insurance Company's motion for

sanctions and Best Inn Midwest, LLC's corresponding objections. For reasons that

follow, the court **OVERRULES** Best Inn's objections and **ADOPTS** the Magistrate

Judge's Report and Recommendation.

**I.      Background**

Best Inn owns a troubled hotel on the south side of Indianapolis. (The hotel is also

called "Best Inn", but the court simply refers to it as the "hotel" to avoid confusion with

Exhibit B                                                              1

Plaintiff's name).  Things hit rock bottom for the hotel in 2019: a leaking roof; water damage from broken pipes, stolen copper pipes, and a series of break-ins that resulted in additional damage.  The year was so bad that the Marion County (Indianapolis) Health Department declared the hotel unfit for human habitation in July and revoked Best Inn's license to operate the hotel in September.

The hotel was insured in 2019 under several policies issued by Ohio Security, a subsidiary of Liberty Mutual.  (*See* Filing No. 5, Submission of State Court Record at 22 – 220).  Best Inn submitted a number of claims to Ohio Security for the 2019 damage to the hotel.  Ohio Security denied those claims and then filed this declaratory judgment action.

Discovery violations, however, have derailed this case.  To understand the nature of those violations, it is first important to understand a critical issue in this case: "vacancy".

Ohio Security's policy (the "Policy"), (Filing No. 5 at 130 – 207), limits coverage for certain losses when the hotel is deemed "vacant" for sixty consecutive days.  (*See* Filing No. 51-3).  Under the Policy, a building is deemed "vacant" unless at least thirty-one percent of its total square footage is rented or used by the building in its customary operations.  (*Id.*).  For that determination, it is helpful—indeed necessary—to see the hotel's guest registers and records; payroll records; employee records; and revenue records.  Indiana law even requires lodging facilities maintain guest records.  *See* Ind. Code § 16-41-29-1.

Exhibit B

Despite repeated requests from Ohio Security, a long telephonic status conference between the parties, a status conference with the magistrate judge, and two court orders directing Best Inn to produce those records, Best Inn never disclosed them. The only thing Best Inn disclosed was Innkeeper tax records which show the hotel's monthly total receipts. The rest of the records were destroyed from water damage. (Filing No. 83-11, Declaration of Adam Dietz ¶ 6). This resulted in Ohio Security filing a motion for sanctions.

On May 28, 2021, the Magistrate Judge recommended this court grant Ohio Security's Motion and declare the hotel "vacant" for the period of January 1, 2019 to December 20, 2019. The Magistrate Judge found Best Inn failed to comply with multiple discovery requests and court orders and that Best Inn offered no explanation for these failures. (Filing No. 77, Report and Recommendation at 8 – 9).

Best Inn now objects to those conclusions.

## II. Legal Standard

District judges may designate any pre-trial matter to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b); *see Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The magistrate judge's undisputed findings are reviewed for clear error, *Johnson v. Zema Syst. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); the contested findings are reviewed *de novo*. *Kanter v. C.I.R.*, 590 F.3d 410, 416 (7th Cir. 2009). "*De novo* review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez*, 725 F.3d at 662. "The district judge makes the ultimate

3

decision to adopt, reject, or modify the magistrate judge's recommendation." *Left Field Media LLC v. City of Chicago*, 137 F.Supp.3d 1127, 1133 (N.D. Ill. 2015).

## III. Discussion

The court first pauses to discuss the odd procedural posture of this motion and report and recommendation. Ohio Security filed its motion for sanctions. Ashok Reddy, Best Inn's sole member, then filed a *pro se* response to that motion, even though Best Inn was still represented by counsel, and, of course, LLCs cannot be represented by non-lawyers. *See United States v. Hagerman*, 545 F.3d 579, 581 – 82 (7th Cir. 2008). The Magistrate Judge declined to strike the Response but also did not find it helpful. (Report and Recommendation at 7). The Magistrate Judge then ruled against Best Inn.

Now represented by different counsel, Best Inn objects to the Report and Recommendation. Best Inn raises new arguments and presents new evidence that were not previously considered by the magistrate judge. Although the usual course would be to strike any new arguments or evidence not previously presented, *see United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000), the court considers these arguments given that Reddy and previous counsel had a deteriorating relationship. *See Mendez*, 725 F.3d at 661 ("The district judge is free, and encouraged, to consider all available information about the case when [reviewing a report and recommendation].").

Turning to the merits, Rule 37 authorizes districts courts to issue sanctions for noncompliance with discovery requests and court orders. *See* Fed. R. Civ. P. 37. District courts also have inherent authority to sanction a party for dilatory tactics. *Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665 (7th Cir. 2006); *see also Salmeron v.*

4

*Enterprise Recovery Syst., Inc.*, 579 F.3d 787, 796 – 98 (7th Cir. 2009). When a party disobeys a discovery order, a court may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action . . . ." Fed. R. Civ. P. 37(b)(2)(A)(i). District courts have wide discretion when fashioning a sanctions remedy. *See Salmeron*, 579 F.3d at 793.

The court agrees with the Magistrate Judge that sanctions are appropriate. The record here demonstrates Best Inn utterly failed to disclose and/or preserve critical records in this case. The record further shows Reddy was well aware of Best Inn's discovery obligations:

> 1. Counsel for Ohio Security wrote Reddy a letter on January 30, 2020 asking him to produce Best Inn's records. (Filing No. 57-1).
>
> 2. Counsel for Ohio Security wrote Reddy another letter on March 7, 2020 asking him again to produce the records. (Filing No. 57-2).
>
> 3. Counsel for Ohio Security e-mailed Reddy on May 19, 2020 again asking for the records. (Filing No. 83-7).
>
> 4. Counsel for Ohio Security, Best Inn's counsel, and Reddy had an extensive telephonic status conference on June 16, 2020. Reddy participated in the conference and was also a part of the subsequent e-mail correspondence. (Filing Nos. 83-4, 83-5, 83-11).
>
> 5. Counsel for Ohio Security, Best Inn's counsel, and Reddy met with the Magistrate Judge on June 19, 2020 and discussed the case, including Best Inn's discovery obligations. (*See* Filing No. 83-11).
>
> 6. Counsel for Ohio Security e-mailed Reddy on July 2, 2020 asking him for Best Inn's records. (Filing No. 83-9).
>
> 7. Counsel for Ohio Security again contacted Reddy on July 27, 2020 asking him for Best Inn's records. (Filing No. 83-10).

Exhibit B                                                                5

Not only did Best Inn fail to respond to Ohio Security's requests, but it also failed to respond to this court's orders directing it to disclose the records. (Filing No. 44, Order Granting Motion to Compel; Filing No. 50 Order Granting Motion to Amend the Case Management Plan). By the time Best Inn granted Ohio Security access to the building in January 2021, the hotel was in shambles and the records had been destroyed. (*See* Dietz Dec. ¶ 6; *see also* Filing No. 83-12, Photos of Hotel). This is clear grounds for sanctions.

The court also agrees with the Magistrate Judge that the proper remedy is to find the hotel "vacant" as the term is used in the Policy for the period of January 1, 2019 through December 20, 2019. First, a monetary sanction and a spoilation instruction (should this make it to a jury) would not account for the egregiousness of the violations. A lesser sanction would also severely hamstring Ohio Security because Ohio Security would be left to prove "vacancy" with little to no evidence. Second, Best Inn's conduct amounts to bad faith. Best Inn engaged in dilatory tactics by failing to respond to any of Ohio Security's requests; ignoring two court orders; and waiting a full year until it granted Ohio Security access to the hotel. What's more, Reddy has told this court different stories about the existence and location of the records. (*See* Filing No. 79, Declaration of Ashok Reddy at 2 – 3) (explaining dishonest staff had stolen the records); (*id.* at 4) (explaining the records were destroyed in a fire). Although this is a strong sanction, Best Inn's tactics severely prejudiced Ohio Security and wasted much of this court's time. Finding the hotel "vacant" is an appropriate sanction. *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) ("The district court

6

may dismiss a case for discovery violations or bad faith conduct in litigation under [Rule 37] or under the inherent authority of the district court.") (citations omitted).

Best Inn contends the fault lies with its previous attorney who encouraged Best Inn to delay and hold out. But it is well-established that litigants are bound by the acts of their attorneys. *Choice Hotels Intern., Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015); *see also Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986). And Reddy actively participated in this litigation (including direct correspondence with Ohio Security), so he cannot merely blame his attorney.

The rest of Best Inn's arguments either contend it is not at fault (which the record belies) or argue whether the hotel was "vacant" (which is a merits question). The court therefore rejects these arguments.

## IV. Conclusion

For those reasons, Best Inn's Objections (Filing No. 78) are **OVERRULED**. The Report and Recommendation (Filing No. 77) is **ADOPTED** and Ohio Security's Motion for Sanctions (Filing No. 51) is **GRANTED**. The court deems the hotel "vacant" under the Policy for the period of January 1, 2019 through December 20, 2019. The parties shall confer and file a joint status update as to this case within **21 days** of this order.

**SO ORDERED** this 16th day of August 2021.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

Exhibit B                                                                 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE OHIO SECURITY INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>BEST INN MIDWEST LLC, )<br><br>Defendant. )<br>_____ )<br>BEST INN MIDWEST LLC, )<br><br>Counter Claimant, )<br><br>v. )<br><br>THE OHIO SECURITY INSURANCE COMPANY, )<br><br>Counter Defendant. ) | No. 1:20-cv-01223-RLY-MG |

**AMENDED FINAL JUDGMENT**

After the court issued its August 16, 2021 Sanctions Order,[1] Plaintiff/Counter

Defendant, The Ohio Security Insurance Company, and Defendant/Counter Claimant,

Best Inn Midwest LLC, agreed that the sole remaining claim for resolution was Best Inn's

counterclaim for bad faith. Best Inn's bad faith claim was dismissed on March 13, 2023,

---

[1] To be precise, the court adopted the Magistrate Judge's recommendation to grant Ohio Security's Motion for Sanctions and deem the Best Inn hotel at issue "vacant" under the contract of insurance for the period of January 1, 2019 through December 20, 2019.

Exhibit C

when the court granted Ohio Security's Motion for Summary Judgment on Best Inn's Bad

Faith Claim.  As all claims and counterclaims have been finally resolved, final judgment

is entered in favor of Ohio Security on its Amended Complaint for Declaratory Judgment

and against Best Inn Midwest LLC.  Accordingly, the court **DECLARES** that Ohio

Security has no further legal obligation to honor, process, or pay the claims made by Best

Inn under the insurance contract, policy no. BKS584327092.


**SO ORDERED** this 15th day of May 2023.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Roger Sharpe, Clerk
United States District Court

_____
By: Deputy Clerk


Distributed Electronically to Registered Counsel of Record.

2

Exhibit C     2

STATE OF INDIANA     )     IN THE MARION COUNTY _____ COURT

) SS:

COUNTY OF MARION     )     CAUSE NO. _____

BEST INN MIDWEST, LLC,     )
    )
        Plaintiff,     )
    )
    v.     )
    )
UNDERWRITERS AT LLOYDS, LONDON,     )
    )
        Defendant.     )

### COMPLAINT FOR BREACH OF INSURANCE POLICY, DECLARATORY JUDGMENT, AND BAD FAITH

Plaintiff Best in Midwest, LLC ("BIM"), for its complaint against Defendant Underwriters at Lloyd's, London ("Lloyd's"), states as follows:

### INTRODUCTION

1.     This Complaint arises from defendants' breach of a first-party property insurance policy and defendants' breach of their duties of good faith and fair dealing toward BIM in adjusting losses at a motel located at 4505 S. Harding Street, in Marion County, Indianapolis, Indiana 46217. A true and accurate copy of the insurance policy is attached as **Exhibit A**.

2.     BIM respectfully seeks: (1) declaratory relief, pursuant to Indiana Code § 34-14-1-1 and Rule 57 of the Indiana Rules of Trial Procedure, to establish the parties' rights and obligations under the insurance policy; (2) actual and consequential damages arising from defendants' breach of the policy; (3) extra-contractual damages caused by the defendants' breach of their duties of good faith and fair dealing; (4) pre-judgment interest on all such damages; and (5) any and all other relief to which BIM may be entitled.

Exhibit D                                                                   1

**THE PARTIES**

3.      BIM is a single-member Indiana LLC with a mailing address of P.O. Box 2535

Issaquah, WA 98027.

4.      On information and belief, Underwriters at Lloyd's, London ("Lloyd's") "isn't an

insurance company, but an insurance marketplace with syndicates. While based in the UK,

Lloyds of London has USA offices as well as offices in other countries around the world.

Underwriters at Lloyds Insurance Company refers either to general syndicate members or to a

branch."[1]

5.      While not a party to this litigation, Ronald Wish was the lender for BIM and

force-placed the insurance policy at issue for BIM. Dr. Wish's mortgage was satisfied.  See

attached **Exhibit B** (Release of Mortgage).

6.      While not a party to this litigation, NGIS Adjusting, LLC ("NGIS") performs

claims administration functions for Lloyd's, including on this claim.  On information and belief.

NGLS is a Delaware LLC located at 5630 University Parkway, Winston-Salem, NC 27105.

**Jurisdiction and Venue**

7.      This Court has jurisdiction over Lloyd's pursuant to Rule 4.4(A)(1) of the Indiana

Rules of Trial Procedure because, on information and belief, Lloyd's is doing business in Indiana

on a regular basis and Rule 4.4(A)(6) because Lloyd's has contracted to insure BIM's property

located in Indiana.  In addition, the Policy includes a "Service of Suit" clause that provides, in

relevant part:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any
> amount claimed to be due hereunder, the Underwriters hereon, at the request of

---

[1] https://www.insuranceproviders.com/companies/underwriters-lloyds-insurance-company/

Exhibit D                                                                                                          2

the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.

(Policy at page 39 of 51.)

8.      Venue is proper in Marion County pursuant to Rule 75 of the Indiana Rules of Trial Procedure.  Preferred venue lies in Marion County pursuant to Rule 75(A)(2) because that is where the insured property is located.

## **THE POLICY**

9.      Lloyd's issued Blanket Mortgage Security Policy No. 406700 to Ronald Wish effective December 19, 2019–December 19, 2020. The Policy provides coverage in the amount of $525,000.  Dr. Wish was paid $92,938.68 due to a fire damage claim in January 2020 to cover his mortgage.  The remaining limits of insurance are thus, $432,061.32.

10.     The Policy further provides that after the mortgage holder's (lender's) claim is satisfied, any remaining benefits go to the mortgagor (borrower). Policy language emphasizes this requirement in at least three different places in the Policy:

- The "**Loss Payable**" clause in the **General Provisions** of the Blanket Mortgage Security Certificate Insuring Agreement (page 12 of 51 of the Policy, ¶ G):

    > Loss, if any, shall be made payable to you as your interest appears. You hereby direct that any benefits payable in excess of your interest shall be paid to the mortgagor.

- The "**Loss Payment**" provisions of the Blanket Mortgage Security Certificate Insuring Agreement's "Conditions" (page 17 of 51 of the Policy, ¶ 11):

    > [Lloyd's] will adjust any loss with you and the mortgagor. We will pay you to the extent of your interest in the property. You hereby direct that any benefits due which are in excess of your interest in the property be paid to the mortgagor . . . .

- The "**Loss Payment**" clause of the "Conditions" provisions of the General Property Amended Form (page 23 of 51 of the Policy, ¶ 10

3

[Lloyd's] will adjust any loss with you and the mortgagor. We will pay you to the extent of your interest in the property. You hereby direct that any benefits due which are in excess of your interest in the property be paid to the mortgagor . . . .

## THE CLAIM

11.     On or about January 2020, there was a fire on the second floor of the motel. Three rooms were impacted and the power was cut off.

12.     Lloyd's, via NGIS, considered the claim through May 2020.  The lender's claim was paid in June 2020.

13.     The Lender applied all proceeds to the lender's loan balance.

14.     A second claim was discovered in June 2020.  On July 8, 2020, Dustin Carrico cleared the motel with armed security.

15.     On July 23, 2020, the lender sent the claim to NGIS.

16.     On or about August 6, 2020, NGIS received the claim and began investigating the claim.

17.     NGIS knew that the above claims occurred during the Lloyd's policy period, but did not adjust the damages in the policy period.

## FIRST CAUSE OF ACTION
(Declaratory Relief)

18.     BIM incorporates by reference the averments of paragraphs 1 through 16 above.

19.     An actual controversy exists as to the nature and scope of BIM's rights and the Lloyd's obligations under the Policy with respect to the loss.

20.     All required premiums on the Policy have been paid in full.  All other pertinent conditions to coverage have been satisfied, excused, or waived.

21.     BIM has been damaged by defendants' breach of the Policy and failure to timely adjust the claims.  Because of such delay, The City of Indianapolis realized the building was

4

severely damaged and created a nuisance.  The City of Indianapolis placed a demolition order on the building.  See attached **Exhibit C** (demolition order). This significantly limited BIM's ability to sell the property.

22.     Declaratory relief will aid the resolution of the dispute between BIM and Lloyd's as to their respective rights and obligations under the Policy.

23.     Pursuant to Ind. Code § 34-14-1-1 and Rule 57 of the Indiana Rules of Trial Procedure, TBD is entitled to declaratory relief establishing defendants' obligation to pay for the loss at the Property.

## SECOND CAUSE OF ACTION
(Breach)

24.     BIM incorporates by reference the averments of paragraphs 1 through 22 above.

25.     The Notice of insurance[2] provides, in relevant part:

> This insurance provides dwelling protection against loss to the property from perils including but not limited to fire, lightning, explosion, vandalism and riot . . . .

26.     The General Property Amended Form insures against all direct loss caused provides:

> The insurance under this Certificate covers "Building (s)" in accordance with the following description. This insurance does not cover land:
>
> Coverage A -Building(s): Building(s) or structure(s) shall include attached additions and extensions; fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building; yard fixtures; personal property of the mortgagor used for the maintenance or service of the described building (s), including fire extinguishing apparatus, outdoor furniture, floor coverings and appliances for refrigerating, ventilating, cooking, dishwashing and laundering (but not including other personal property in apartments or rooms furnished by the mortgagor as landlord); all while at the described location(s).

(Policy at page 19 of 51.)

---

[2] Page 1 of 51

5

27.     The General Property Amended Form, **SECTION IV- PERILS INSURED**

**AGAINST** provides "This Certificate insures against all direct loss caused by . . . **8. Vandalism**

**or Malicious Mischief, meaning only the** willful and malicious damage to or destruction of the

property covered.

28.     As a result of Lloyd's breach, BIM has incurred, and will incur, substantial costs,

expenses related to the loss.

29.     BIM is entitled to damages equal to the costs that have been, and will be, incurred

as a result of the loss, consequential damages arising from defendants' breach and pre-judgment

interest on all such costs or expenses.

### THIRD CAUSE OF ACTION
(Bad Faith)

30.     BIM incorporates by reference the averments of paragraphs 1 through 28 above.

31.     The obligation of good faith and fair dealing with respect to the discharge of the

insurer's contractual obligation includes the obligation to refrain from (l) making an unfounded

refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving

the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of

his claim. *Erie Ins. Co. v. Hickman*, 622 N.E. 2d 515, 519 (Ind. 1993).

32.     This violates multiple sections of Indiana's Unfair claims settling practices,

pursuant to IC 27-4-1-4.5. With respect to this dispute, the following unfair claims settlement

practices are relevant:

33.     (3) Failing to adopt and implement reasonable standards for the prompt

investigation of claims arising under insurance policies.

34.     (4) Refusing to pay claims without conducting a reasonable investigation based

upon all available information.

6

35.     (6) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

36.     (7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

37.     While this statute does not provide for a private right of action, the standards it sets out are important evidence as to bad faith. "Although these allegations track the language of Ind. Code § 27-4-1-4.5, if proven they could establish First American breached its duty to deal with House in good faith." *House v. First Am. Title Co.*, 883N.E. 2d 197, 204 (Ind. Ct. App. 2008).

> One unfair claim settlement practice is to misrepresent pertinent facts or insurance policy provisions relating to coverages at issue. I.C. § 27-4-1-4.5(1). Another unfair practice is the failure to adopt and implement reasonable standards for the prompt investigation of claims. I.C. § 27-4-1-4.5(3). A third unfair practice is the refusal of a claim without conducting a reasonable investigation based on all available information. I.C. § 27-4-1-4.5(4). Other unfair practices include the compelling of an insured to institute litigation to recover amounts due under an insurance policy and failing to promptly provide a reasonable explanation of a denial. I.C. § 27-4-1-4.5(7), (14). Evidence at trial could support the conclusion that these practices occurred.

*Michigan Mut. Ins. Co. v. Sports, Inc*., 698 N.E. 2d 834, 844 (Ind. Ct. App. 1998):

38.     Here, Lloyd's:

- Failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. I.C. § 27-4-1-4.5(2).

- Failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies. I.C. § 27-4-1-4.5(3).

- Refused to pay claims without conducting a reasonable investigation based upon all available information. I.C. § 27-4-1-4.5(4)

Exhibit D

- Did not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. I.C. § 27-4-1-4.5(6).

Additional unfair claims practices may come to light during discovery.

39.    In addition, IC 34-52-1-1 provides:

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1)   brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2)   continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3)   litigated the action in bad faith.

40.    Neither Lloyds nor NGIS paid any portion of BIM's loss.

41.    Indiana's Supreme Court has held that even a good faith dispute concerning insurance coverage does not preclude a multi-million dollar punitive damages judgment for bad faith. *Monroe Guar. Ins. Co. v. Magwerks Corp*. 829 N.E.2d 978 (Ind. 2005). Lloyd's never has had a basis to deny this claim it could support with any evidence. Lloyd's has breached the insurer's fundamental duty to treat its policyholder's interests on equal footing with its own. In *Magwerks,* the Court held that the insured based its bad faith claim on the insurer's "manner of handling the claim" (*i.e.*, Monroe Guaranty called the loss a "collapse", but then denied that description in the subsequent coverage litigation). *Id*. at 976-77.[3]  In *Klepper v. Ace Am. Ins. Co.*, 999 N.E.2d 86 (Ind. Ct. App. 2013), the Indiana Court of Appeals concluded that, despite the fact that the court found there was no coverage "we cannot conclude at this stage of the

---

[3] The *Magwerks* jury returned a verdict for Magwerks in the amount of $5.1 Million, including $4 million in punitive damages.

Exhibit D                                                                                              8

proceedings that the resolution of the contract dispute necessarily disposes of the tort-based bad faith claim." *Id*. at 98-99.

42.     BIM is entitled to damages equal to the costs that have been, and will be, incurred as a result of the loss, consequential damages arising from defendants' breach and pre-judgment interest on all such costs or expenses.

43.     BIM is entitled to damages equal to the costs that have been, and will be, incurred as a result Lloyd's investigation continued from August 20, 2020 through March 4, 2021 (the date of Ashok Reddy's examination under oath). Nonetheless, no decision has been made by Lloyd's and no payment has been made to BIM.

Respectfully submitted,

PLEWS SHADLEY RACHER & BRAUN LLP

By: /s/ Brett E. Nelson
        Attorneys for Plaintiff

Brett E. Nelson, Atty. # 22096-53
Yuning Tian, Atty # 36984-53
Plews Shadley Racher & Braun LLP
1346 N. Delaware St.
Indianapolis, IN   46202-2415
Tel:  (317) 637-0700
Fax:  (317) 637-0710

Exhibit D                                                                                                    9

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## ORDER

October 4, 2023

*By the Court:*

| | |
|---|---|
| No. 23-1696 | OHIO SECURITY INSURANCE COMPANY,<br>Plaintiff - Appellee<br>v.<br>BEST INN MIDWEST, LLC,<br>Defendant - Appellant |

**Originating Case Information:**

District Court No: 1:20-cv-01223-RLY-MG
Southern District of Indiana, Indianapolis Division
District Judge Richard L. Young

Upon consideration of the **MOTION FOR EXTENSION OF TIME TO FILE OPENING BRIEF**, filed on October 2, 2023, by counsel for the appellant,

      1.      The brief and required short appendix of the appellant are due by November 6, 2023.

      2.      The brief of the appellee is due by December 6, 2023.

      3.      The reply brief of the appellant, if any, is due by December 27, 2023.

Counsel for the appellant is reminded that motions for extension of time should be filed seven days before the brief is due and should include an affidavit. See Cir. R. 26.

Important Scheduling Notice!
Hearing notices are mailed shortly before the date of oral argument. Please note that counsel's unavailability for oral argument must be submitted by letter, filed electronically with the Clerk's Office, no later than the filing of the appellant's brief in a criminal case and the filing of an appellee's brief in a civil case. *See* Cir. R. 34(b)(3). The court's calendar is located at http://www.ca7.uscourts.gov/cal/argcalendar.pdf. Once scheduled, oral argument is rescheduled only in extraordinary circumstances. *See* Cir. R. 34(b)(4), (e).

Exhibit E                                                   1